Juline MAGDEN, Appellant,

v.

ALASKA USA FEDERAL CREDIT UNION, Appellee.

No. S–9314.

Supreme Court of Alaska.

Nov. 23, 2001.

15. *Beck v. State, Dep't of Transp. and Public Facilities,* 837 P.2d 105, 113 (Alaska 1992) (citation omitted).

Janet L. Bolvin, Anchorage, for Appellant.

Marshall K. Coryell, Coryell & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Under Alaska Civil Rule 69(d)(1), a judgment creditor who fails to obtain a writ of execution within five years after entry of judgment must show "just and sufficient reasons" before execution may issue. In the present case, B. Juline Magden appeals a superior court order allowing Alaska USA Federal Credit Union (AUSA) to execute on a judgment that was entered against her more than five years previously; Magden argues that AUSA failed to show any fair and just reasons for its delay in seeking

execution. We affirm, concluding that the record supports the superior court's finding of a fair and just reason.

## II. FACTS AND PROCEEDINGS

On July 17, 1989, AUSA obtained a deficiency judgment against Magden in the amount of $43,502.30 plus interest.[1] AUSA sought to execute the judgment against Magden's income, but she successfully moved to exempt her income from execution. AUSA also executed against Magden's permanent fund dividends (PFDs) in 1990 and 1991; when Magden was unsuccessful at exempting her dividends from execution, she appealed to this court. In September 1991, while Magden's appeal was pending, the parties signed a settlement in which AUSA agreed not to execute against Magden's PFDs in exchange for Magden dismissing her appeal.

This settlement agreement also required Magden to provide AUSA with copies of her federal income tax returns by August 15 of each year. If, according to her tax return, Magden's net taxable income was less than $16,800 for the year, AUSA would not attempt to execute against her PFDs.[2] However, if Magden's annual net income exceeded $16,800, AUSA could execute against her PFD up to the maximum amount allowed by law. Further, the settlement agreement permitted AUSA to execute on Magden's other assets: "Nothing contained in this agreement shall limit the right of [AUSA] to execute on any other assets of [Magden]. This agreement is settlement of the issues regarding execution against debtor's Permanent Fund Dividend only."

Magden provided AUSA with copies of her income tax returns for tax years 1991–1996, during which time Magden's annual net income never exceeded $16,800. When Magden did not provide AUSA with a copy of her 1997 return by August 15, 1998, counsel for AUSA sent her two separate letters requesting that she provide a copy of her 1997

1. AUSA previously obtained a deficiency judgment against Magden on March 31, 1989, in the amount of $76,222.33. The judgment was decreased to $43,502.30 after AUSA sold some of Magden's property and applied the proceeds to the outstanding balance.

2. AUSA arrived at the figure of $16,800 because debtors' earnings up to $350 per week—or $16,800 per year—were statutorily exempt. *See* former AS 09.38.030 (1991).

return. Magden still refused to provide a copy of her 1997 return, so AUSA moved for execution on the judgment in June 1999. Magden opposed AUSA's motion, contending that execution was barred by AS 09.35.020, which provides that, absent "just and sufficient reasons," no execution may issue when five years elapse without execution after a judgment is entered.

Superior Court Judge Rene J. Gonzalez granted AUSA's motion, finding that AUSA had "just and sufficient reasons" for failing to obtain a writ of execution within five years. Magden moved for reconsideration; Judge Gonzalez denied this motion. Magden appeals.

## III. DISCUSSION

### A. Standard of Review

 " 'We exercise our independent judgment when interpreting and applying statutes of limitations.' " [3] In reviewing motions for reconsideration, we will not overturn a trial court's denial unless we find an abuse of discretion.[4]

### B. AUSA Set Forth "Just and Sufficient Reasons" for Failing to Obtain a Writ of Execution Within Five Years After Judgment.

 The clerk of court entered AUSA's judgment against Magden on July 17, 1989. After entering the settlement agreement on

September 10, 1991, AUSA did not attempt to execute on the judgment until June 23, 1999. Alleging that AUSA lacked "just and sufficient reasons for failure to obtain a writ of execution on the judgment during the last eight years," Magden opposed AUSA's motion for issuance on execution.

If a creditor fails to execute on a judgment within five years of the judgment's entry date, the creditor must obtain court approval before executing against the judgment under Alaska Rule of Civil Procedure 69(d).[5] Alaska Statute 09.35.020 further provides:

> When a period of five years has elapsed after the entry of judgment and without an execution being issued on the judgment, no execution may issue except by order of the court in which judgment is entered. *The court shall grant the motion if the court determines that there are just and sufficient reasons for the failure to obtain the writ of execution within five years after the entry of judgment.*[6]

In support of her argument that AUSA lacked "just and sufficient reasons" for failing to execute against the judgment within five years, Magden emphasized that AUSA did not attempt to execute on the judgment, even though the settlement agreement permitted AUSA to execute on Magden's other assets.

Judge Gonzalez determined that AUSA did, in fact, have "just and sufficient reasons"

---

**3.** *Koss v. Koss,* 981 P.2d 106, 106–07 (Alaska 1999) (quoting *McDowell v. State,* 957 P.2d 965, 968 n. 4 (Alaska 1998)).

**4.** *See, e.g., Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.,* 895 P.2d 497, 506 (Alaska 1995); *Miller v. McManus,* 558 P.2d 891, 892 (Alaska 1977).

**5.** Alaska Rule of Civil Procedure 69(d) provides, in relevant part:
> *Execution After Five Years.* Whenever a period of five years shall elapse without an execution being issued on a judgment, no execution shall issue except on order of the court in the following manner:
> (1) The judgment creditor shall file a motion supported by affidavit with the court where the judgment is entered for leave to issue an execution. The motion and affidavit shall state the names of the parties to the judgment, the date of its entry, the reasons for failure to obtain a writ for a period of five years and the

amount claimed to be due thereon or the particular property of which possession was adjudged to the judgment creditor remaining undelivered.

**6.** AS 09.35.020 (emphasis added); *see also State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Gause v. Gause,* 967 P.2d 599, 601–02 (Alaska 1998) ("[A] judgment creditor who attempts to execute a judgment after a lapse of five years must show good cause for the delay; however, the statute places no absolute time limit on enforcement proceedings."); *State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Inman v. Dean,* 902 P.2d 1321, 1325 (Alaska 1995) ("In order to collect unpaid obligations that vested more than five years before the current proceedings, execution will not issue unless [the creditor] can show to the court's satisfaction 'just and sufficient reasons for the failure to obtain the writ of execution.' ") (quoting AS 09.35.020).

for failing to obtain the writ of execution within the five-year period. Judge Gonzalez noted that "[t]he credit union refrained from executing against Magden's permanent fund dividend due to a settlement agreement; they were prevented from executing against her regular income because she successfully sought exemption; and beyond this, there were no assets to execute against."[7] Even though AUSA was free to execute against Magden's other assets, the superior court noted that AUSA credit officers claimed that "Magden had no other assets available for execution. Magden does not dispute this. Under the circumstances, any attempt to execute against assets other than Magden's permanent fund dividend would have been futile."

On appeal, Magden argues that the superior court erred in permitting AUSA to execute on a judgment that was over five years old. Magden urges us to find that the evidence that AUSA presented "was insufficient in that [Magden's] taxable income and her Permanent Fund dividend did not constitute the totality of her assets and that AUSA failed to demonstrate *any* reason for failing to execute on her remaining non-exempt assets during the period of limitations."

Our review of the record supports the superior court's finding that AUSA had "just and sufficient reasons" for failing to execute within five years of the judgment's entry.[8] Magden offered no evidence in her opposition that she possessed any non-exempt assets upon which AUSA could execute,[9] and since AUSA was precluded from executing against Magden's income or PFDs, any attempts by AUSA to enforce the judgment would have been futile. We therefore affirm the superior court's granting of AUSA's motion to execute after five years.

## C. The Superior Court Did Not Abuse Its Discretion in Denying Magden's Motion for Reconsideration.

■ In her motion for reconsideration, Magden argued that because AUSA performed no research to determine whether she had other assets upon which it could execute, AUSA lacked "just and sufficient reasons" for failing to execute on the judgment within five years. In an affidavit attached to her motion, Magden stated that she had received over $25,000 from a child support payment in 1994, over $8,000 from the Social Security Division in 1995, and over $30,000 from a deceased family member in 1996. Since Magden believed that none of these assets were taxable income, she did not report these assets on her federal income tax return. Moreover, she did not disclose them to AUSA because AUSA asked "no questions."

Judge Gonzalez denied Magden's motion for reconsideration because Magden failed to show valid reasons warranting reconsideration. Responding to Magden's assertion that she possessed other assets, Judge Gonzalez noted that "Magden did not raise this issue in her original opposition, and a motion for reconsideration may not be used as a means to seek an extension of time for the presentation of additional evidence on the merits of a claim."

Magden appeals the denial of her motion for reconsideration, arguing that she did not present new evidence; rather, she merely "*amplified* on her original assertion through her *identification* of non-exempt assets in an affidavit." She maintains that the superior court overlooked the material fact that she

---

7. Ms. Sharyn Clabaugh, a loan control officer at AUSA, explained that "[t]he rationale for entering into the Settlement Agreement was that, according to [AUSA's] information, [Magden] probably had no assets that would not be exempt from execution. The only additional asset upon which plaintiff could execute would be the earnings of [Magden]." As a result, AUSA required Magden to provide AUSA with copies of her federal income tax returns to determine whether AUSA "had any basis for attempting execution against the earnings of [Magden]."

8. We have stated that a creditor "may be able to demonstrate any number of valid reasons supporting its decision to delay formal execution." *Dean,* 902 P.2d at 1325.

9. In her opposition, Magden merely stated: "There was nothing in the agreement that prevented [AUSA] from executing against [Magden's] other assets. . . ." Magden did not present evidence that she indeed possessed assets subject to execution, identify any such assets, or allege that her possession of such assets was readily apparent to AUSA.

# 663

previously had alleged the existence of other assets upon which AUSA could have executed its judgment.

We agree with the superior court that Magden attempted to use her motion for reconsideration as a method of presenting additional evidence. We have stated: We refuse to allow a motion for reconsideration to be used as a means to seek an extension of time for the presentation of additional evidence on the merits of the claim. To do so would defeat the limited purpose of Rule 77(k): to remedy mistakes in judicial decision-making where grounds exist, while recognizing the need for a fair and efficient administration of justice.[10]

Magden's affidavit on reconsideration did not merely "amplify" her claim that she had assets upon which AUSA could execute: her original pleadings never asserted the existence of specific non-exempt assets.

 But even assuming that Magden only "amplified" her original claim that she had assets upon which AUSA could execute, this would not change our decision. Although we do not know the exact dates Magden received these additional assets, she stated that she received a child support payment in 1994, a social security payment in 1995, and an inheritance in 1996. However, the five-year time limit under which AUSA could execute on the judgment without leave of the court expired in July 1994. Thus, the monies she received in 1995 and 1996 were outside the five-year window; even if AUSA attempted to execute within five years of the date of the judgment's entry, it would have been unsuccessful because Magden did not possess these assets during that time. And although it is possible that Magden received the child support payment before the time period expired, the payment may have been exempt under AS 09.38.015.[11] The facts belie Magden's argument on appeal that she possessed "readily identifiable non-exempt assets avail-

able for execution during the five year period of limitations specified in AS 09.35.020."

Because Magden's motion for reconsideration presented new and additional evidence, and because such evidence would not prevent a finding that AUSA had "just and sufficient reasons" for declining to execute on the judgment within five years, we hold that the superior court did not abuse its discretion in denying Magden's motion for reconsideration.

## IV. CONCLUSION

For the above reasons, we AFFIRM the superior court.

**D.J., Appellant,**

v.

**P.C., Appellee.**

**No. S–9470.**

Supreme Court of Alaska.

Dec. 5, 2001.

---

**10.** *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995).

**11.** AS 09.38.015(b) provides that "[t]he right to benefits held by the state on behalf of an individual that may become payable by reason of disability, unemployment, or illness, amounts held

in the teachers', judicial, or public employees' retirement system, or in the elected public officers' retirement system under former AS 39.37, and *child support collections made by the child support enforcement agency* are exempt." (Emphasis added.); *see also* AS 09.38 for additional exemptions under the Alaska Exemptions Act.