MARY LONG, Plaintiff-Appellee, v. ANTHONY TRANKA, Defendant-Appellant.

Second District   No. 2—85—0387

Opinion filed August 19, 1986.

Louis P. Walter, Jr., of Ohio, for appellant.

Charles T. Beckman, of Keller & Beckman, P.C., of Dixon, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant appeals from a judgment entered by the circuit court of Lee County on March 18, 1985, assessing certain repair costs against defendant after the court found him to be in contempt for failure to comply with an order entered on September 30, 1983.

Plaintiff and defendant are adjoining farm owners. Plaintiff owns parcels of land situated directly to the north and east of defendant's farm. A natural waterway, known as Coon Creek, flows in a northwesterly direction over that portion of plaintiff's property lying to the east of defendant's farm. If allowed to drain naturally, the surface waters would flow northwesterly over defendant's property and onto that portion of plaintiff's land lying to the north of defendant's farm.

Plaintiff instituted this action in 1979 charging that defendant had constructed a levee and ditch along the eastern and northern boundaries of his property, thereby diverting the natural flow of surface water. (For purposes of clarity, the ditch along the eastern portion of defendant's farm will be referred to as the north-south ditch, while the ditch along the northern portion of defendant's farm will be referred to as the east-west ditch.) Plaintiff alleged that the surface water, instead of draining naturally across defendant's property, flows north in the north-south ditch to the northern border of defendant's farm where it then turns and flows west in the east-west ditch, eventually returning to its natural course and draining over the tract of land owned by plaintiff north of defendant's farm. Plaintiff alleged that the artificial diversion caused surface water to overflow onto her property, damaging her crops and causing erosion of the soil. Plaintiff prayed for, *inter alia,* an order requiring defendant to restore the watercourse to its natural state by removing the levee and filling in the ditch.

After hearing the evidence, the trial court, on September 30, 1983, found for plaintiff. However, instead of requiring defendant to remove the levee and fill in the ditch, the court enjoined defendant from raising the elevation of the west bank of the north-south ditch unless he also raised the east bank in equal proportion. The court

further ordered that by December 31, 1983, defendant was to (1) lower the west bank to the same height as the east bank, and (2) remove all obstructions and debris from the entire length of the ditch.

Defendant failed to comply with the order. As a result, on April 27, 1984, plaintiff filed a petition for a rule to show cause why defendant should not be held in contempt. A hearing was subsequently held—at which defendant presented no evidence in his defense—and on November 14, 1984, the court found defendant to be in contempt. At this point it should be observed that the trial court was faced with a difficult situation. On the one hand the evidence clearly showed defendant to be in wilful contempt of the court's September 30, 1983, order. At the same time, though, the record discloses that defendant was suffering from serious health problems. Not only was he seeking to recover from the effects of a stroke, but he was also bedridden as a result of a broken hip. Given defendant's physical condition, incarceration was not a feasible means of securing defendant's compliance with the court's order. Pursuant to a request by defendant's counsel for additional time, the court gave defendant until November 22, 1984, to purge himself of the contempt. Additionally, recognizing that the only practical way of correcting the drainage problem if defendant failed to act was to authorize plaintiff to have the work done, the court ordered that if defendant took no action by November 22, plaintiff could proceed to hire an engineering firm and any personnel necessary to complete the project, with the cost of the repairs to be charged to defendant.

Because defendant took no action whatsoever to comply with the court's order, plaintiff, in accordance with the court's directive, hired an engineering firm and other construction personnel to perform the work. After completion of the project, a hearing was held regarding plaintiff's petition to fix costs. At the conclusion of that hearing judgment was entered against defendant in the amount of $14,227.

■ The issue to be decided is whether the court erred in assessing all the repair costs against defendant. Before addressing this question, we first consider a motion that was ordered taken with the case. Plaintiff filed a motion in this court seeking to dismiss defendant's appeal on the ground that he had voluntarily paid the judgment in full. By doing so, plaintiff argues, defendant has waived any error in the trial court's ruling. We disagree.

Although there is a split among authorities concerning whether a defeated party loses the right to appeal by paying the full amount

of the judgment (see generally Annot., 39 A.L.R.2d 153 (1955)), in Illinois "it is well established that the payment or satisfaction of a money judgment by a judgment debtor does not bar the prosecution of a writ of error or an appeal by such judgment debtor." *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 523; see also *Richeson v. Ryan* (1852), 14 Ill. 74; *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163, 173.

Plaintiff relies exclusively on *County of Cook v. Malysa* (1968), 39 Ill. 2d 376, for the proposition that one who voluntarily pays a judgment waives the right to appeal. Plaintiff's reliance on *Malysa* is clearly misplaced. In *Malysa* the court held that a condemnor in an eminent domain proceeding who pays a judgment waives any errors in the original proceeding. Significantly, the court, citing *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, and *Richeson v. Ryan* (1852), 14 Ill. 74, observed that in an ordinary civil case a judgment debtor does not lose the right to appeal by paying the amount of the judgment since payment is considered to be compulsory, even if made prior to execution. Unlike a conventional civil judgment, the court said, a judgment in an eminent domain action "does not impose a liability upon the condemnor but merely establishes a value that it must pay to acquire title. The condemnor is under no compulsion to pay the award, and no execution may issue upon the award." (*County of Cook v. Malysa* (1968), 39 Ill. 2d 376, 379.) Due to the "basic difference" between an ordinary civil judgment and an eminent domain judgment, the court found *Pinkstaff* and *Richeson* to be distinguishable, concluding that when a condemnor pays an award it does so voluntarily and therefore must be regarded as having waived any errors in the original proceeding. 39 Ill. 2d 376, 379-81.

In light of the holdings in *Richeson* and *Pinkstaff*, as well as the views expressed in *Malysa*, it is evident that defendant's payment of the judgment in the case at bar was compulsory and not, as plaintiff asserts, voluntary. As such, this case is governed by the rule first established in *Richeson* and reaffirmed in *Pinkstaff* providing that where a judgment is paid under a legal compulsion, the judgment debtor is not barred from thereafter challenging that judgment on appeal. We therefore deny plaintiff's motion to dismiss the instant appeal.

■ Turning next to the issue presented in this appeal, it is defendant's contention that the trial court erred in entering judgment against him for the cost of all the work performed on the

ditch and levee. It is important to emphasize that defendant raises no challenge to the propriety of permitting plaintiff to have the work completed. Nor does he dispute having to pay for the repairs necessary to bring the ditch and levee into compliance with the court's September 30, 1983, order. Rather, his sole claim is that he is being forced to pay for work not expressly authorized by the September 30 order. Defendant takes the position that the order did not specifically command him to do anything with respect to the banks of the east-west ditch but instead only required him to lower the west bank of the north-south ditch to the same height as the east bank and to clear the ditch of obstructions and debris. Referring to testimony presented at the hearing to fix costs, defendant observes that a large portion of the work pertained to the banks of the east-west ditch and to plaintiff's adjoining land. He cannot be forced to pay for that work, he asserts, since it was not within the purview of the court's order.

Defendant's narrow and restrictive interpretation of the September 30 order cannot be sustained. A judgment or decree must be construed with reference to other parts of the record, including the pleadings and issues presented. (*Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 789; *Western Theological Seminary v. City of Evanston* (1962), 34 Ill. App. 2d 162, 165.) It "is to be construed reasonably and as a whole so as to give effect to the apparent intention of the court. Effect must be given not only to that which is expressed, but also to that which is unavoidably and necessarily implied in the judgment or decree." *Winter v. Winter* (1978), 69 Ill. App. 3d 359, 363.

In this case plaintiff charged in her complaint that defendant's ditch and levee had diverted the natural flow of surface water, causing injury to her crops and soil. The trial court found that plaintiff had proved the allegations in her complaint and ordered defendant to take certain measures to rectify the situation. It was clearly the court's intent that the ditch and levee be modified so as to prevent surface water from overflowing onto plaintiff's property. Toward this end, the court, recognizing that the drainage problem essentially presented an engineering question, authorized plaintiff to employ an engineering firm to oversee the repair work in the event defendant failed to take corrective action by November 22, 1984. After defendant failed to comply, the ditch and levee were modified pursuant to the recommendations of the engineering firm approved by the court.

■ Defendant now complains about having to pay for work on the banks of the east-west ditch and for certain work on plaintiff's

land, claiming that such work was outside the scope of the court's order. We cannot agree. In addition to directing defendant to lower the west bank of the north-south ditch, the order required defendant to remove all debris and obstructions from the entire length of the ditch, which necessarily would entail the removal of any obstruction or debris from the banks of the east-west ditch. The record discloses that several large trees were removed from the east-west ditch. Although it is not clear from the record exactly where the trees were located, Gerald Conroy, the engineer in charge of the project, testified they "were actually growing right down into the ditch" and that "they had to be removed." Conroy also stated that the entire ditch was dredged and the dirt and debris were used to build a levee or dike along the north bank (plaintiff's side) of the east-west ditch. This was necessary in order to bring the north bank up to the same height as the levee that defendant had previously constructed along the south bank. While it appears much of the work was performed from plaintiff's side of the ditch and that the dike along the north bank is in fact situated on plaintiff's property, one of the contractors testified it would have been impossible to do the work from defendant's side of the ditch. The record further reflects that the court relied heavily on Conroy's testimony in determining what work was required to bring the ditch into compliance with its original order. In this regard Conroy testified without contradiction that all the work undertaken was necessary in order to conform the ditch to the court's order.

As it presently exists, the ditch is free of all obstructions and its banks are of equal height throughout the entire length of the ditch. This is plainly what the court intended to accomplish. Accordingly, we see no error in requiring defendant to pay all the repair costs, and we therefore affirm the judgment of the circuit court of Lee County.

Judgment affirmed.

SCHNAKE and STROUSE, JJ., concur.