*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEISNOI, INC., | ) | |
| | ) | Supreme Court No. S-13790 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-85-16520 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MERDES & MERDES, P.C., | ) | |
| | ) | No. 6747 – February 1, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Brian C. Shortell and Sen K. Tan, Judges.

Appearances: Robert K. Reiman, Law Offices of Robert K. Reiman, Anchorage, for Appellant. Ward M. Merdes, Merdes & Merdes, P.C., Fairbanks, Appellee.

Before: Fabe, Chief Justice, Carpeneti and Stowers, Justices. [Winfree, Justice, not participating.]

STOWERS, Justice.

## I.     INTRODUCTION

Leisnoi, Inc., an Alaska Native corporation, retained the law firm of Merdes & Merdes to represent it in litigation against Omar Stratman over its certification of and title to certain lands Leisnoi claimed under the Alaska Native Claims

Settlement Act. Leisnoi and Merdes entered a contingency fee agreement under which, if Leisnoi was successful in the litigation, Merdes would receive an interest in the lands Leisnoi obtained or retained. The Stratman case was resolved in 1992 in favor of Leisnoi, although Stratman appealed and the related litigation continued for another decade. Leisnoi challenged the validity of the fee agreement with Merdes. A bar-appointed Arbitration Panel determined that Merdes was not entitled to an interest in the land itself, but was entitled to payment equal to a percentage of the adjusted value of Leisnoi's property, plus interest. In 1995, upon Merdes's motion, Superior Court Judge Brian C. Shortell confirmed the fee award and entered judgment against Leisnoi. For several years, Leisnoi made payments pursuant to the schedule laid out by the Arbitration Panel. In September 2002, Leisnoi ceased making payments and the judgment went into default. Leisnoi and Merdes subsequently attempted to negotiate a settlement; Merdes did not pursue execution during this period.

In October 2008, the Stratman litigation finally concluded in Leisnoi's favor. The following year, Merdes moved the superior court to issue a writ of execution. Leisnoi opposed the motion on the grounds that Merdes had not shown just and sufficient cause for failing to seek a writ of execution within five years of entry of the 1995 judgment. Leisnoi subsequently moved for relief from the 1995 judgment under Alaska Civil Rule 60(b), arguing among other things that the judgment was void under 43 U.S.C. § 1621(a)'s restrictions on contingency fee contracts involving Alaska Native Claims Settlement Act lands. In January 2010, Superior Court Judge Sen K. Tan issued an order denying Leisnoi's Rule 60(b) motion and granting Merdes's motion to execute. Six months later, Leisnoi paid Merdes the remaining balance. Leisnoi now appeals the superior court's ruling.

This case presents a number of complex issues involving questions of waiver and whether the superior court's 1995 judgment was void or voidable. We conclude that Leisnoi did not waive its right to appeal by paying Merdes the balance due on the judgment. We conclude that the Arbitration Panel's fee award and the superior court's 1995 entry of judgment violated 43 U.S.C. § 1621(a)'s prohibition against attorney contingency fee contracts based on the value of Native lands that were subject to the Act. We conclude that the superior court's 2010 order granting Merdes's motion to execute on the 1995 judgment separately violated the Act's prohibition against executing on judgments arising from prohibited attorney contingency fee contracts, and that order is reversed. We conclude that, notwithstanding the illegality of the Arbitration Panel fee award and the 1995 judgment, Leisnoi is not entitled to relief pursuant to Civil Rule 60(b): We conclude that the 1995 order was voidable rather than void for purposes of Civil Rule 60(b), and therefore not subject to attack under Civil Rule 60(b)(4); we also conclude that Leisnoi is not entitled to relief under Civil Rule 60(b)(5) or 60(b)(6). Accordingly, Merdes must return Leisnoi's payment of the $643,760 balance on the judgment, with interest, but Leisnoi is not entitled to recover payments made prior to the issuance of the writ of execution. Merdes may file an action for any fees it believes it is entitled to under a theory of quantum meruit.

## II.    FACTS AND PROCEEDINGS

Leisnoi, Inc. is a Native corporation certified under the Alaska Native Claims Settlement Act (ANCSA).[1] In January 1988, Leisnoi retained attorney

---

[1]    Pub. L. No. 92-203, 85 Stat. 688 (1971) (codified as amended at 43 U.S.C. §§ 1601-1629h) (2006); *see also Stratman v. Leisnoi, Inc.*, 969 P.2d 1139 (Alaska 1998) (noting Leisnoi's status as a certified village corporation pursuant to ANCSA).

Ed Merdes to represent it in litigation against Omar Stratman. Stratman sought to compel Leisnoi to comply with the terms of a prior settlement with Koniag, Inc., another Native corporation from which Leisnoi had been demerged in 1983, under which Koniag had agreed to sell certain lands on Kodiak Island to Stratman.[2] Leisnoi, which had received a 1985 patent to the surface rights of the land at issue, refused to honor the settlement.[3]

Merdes and Leisnoi entered into a contingency fee agreement providing that if the litigation proved successful, Merdes would be "remunerated by the Client conveying to him an undivided thirty percent . . . interest in all lands and/or settlement the Client succeeds in obtaining and/or retaining by virtue of said litigation," along with any attorney's fees awarded by the court. In 1992, the case was resolved in favor of Leisnoi, which kept title to its lands.[4] (Stratman appealed, and the litigation continued until its final resolution in 2008.[5]) Merdes filed a Notice of Attorney's Lien in the Alaska Supreme Court on July 20, 1992, purporting to place a lien on the approximately 19,000 acres of real property that was the subject of the litigation. Leisnoi challenged the validity of the fee agreement and requested arbitration with the Alaska Bar Association's Fee Review Committee ("Arbitration Panel").

---

[2]    *Stratman*, 969 P.2d at 1140.

[3]    *Id.*

[4]    Ed Merdes died in 1991. Merdes & Merdes, P.C., continued to represent Leisnoi and subsequently sought fees on Ed Merdes's behalf. "Merdes" is used in this opinion to refer collectively to Ed Merdes, his estate, and Merdes & Merdes, P.C. (represented in this matter by Ward Merdes, Ed Merdes's son).

[5]    *Stratman v. Leisnoi, Inc.*, 545 F.3d 1161 (9th Cir. 2008), *cert. denied Stratman v. Salazar*, 129 S.Ct. 2861 (June 29, 2009).

The Arbitration Panel held a hearing in May 1994 at which both parties presented evidence and argument. The Arbitration Panel found that Merdes did not adequately explain the contingency fee agreement to Leisnoi's Board of Directors and failed to "make sure that the board . . . understood that [Merdes] would end up being a co-owner of an undivided 30% interest in the land" — a situation that could cause Leisnoi to lose its tax exemption on the land. The Arbitration Panel also found that Merdes had, without Leisnoi's knowledge or consent, improperly agreed to divide his fees with other attorneys he hired to help with the case. The Arbitration Panel noted, however, that "Ed Merdes . . . did fight an uphill battle and achieved the best possible outcome on behalf of the client" and "took a considerable risk that his time would be completely uncompensated."

The Panel declined to award Merdes a 30% interest in the land itself. But it found that 30% was a "reasonable percentage" and awarded $721,000 in attorney's fees, plus interest, payable in $100,000 yearly installments. It appears to have calculated this amount by taking 30% of the value of the land after substantially discounting that value to reflect clouds on Leisnoi's title, the portion of the land subject to pre-existing low-rent grazing leases, and payments made by Leisnoi to Merdes pursuant to a modification not clearly agreed to by the Leisnoi board. Interest was to accrue at 8% per annum, except that any payments in default would accumulate interest at 10.5% per annum. The Panel also ordered Leisnoi to pay Merdes $55,000 in court-awarded attorney's fees. Both parties subsequently filed applications for modification with the Arbitration Panel; in an August 1994 decision, the Arbitration Panel clarified the applicable interest rates and declined to modify the panel-awarded attorney's fee amount. It noted:

The panel does not agree with Leisnoi's characterization that the arbitration award in this matter set aside or voided the contingent fee contract between Merdes and Leisnoi. The panel specifically refused to void the contract or award fees based on hourly rates . . . . Rather . . . the arbitration award interpreted the contingent fee contract to not be a 30% ownership interest in land, but a security interest or lien against the land . . . . The arbitration award is an attempt to allow Leisnoi to preserve its lands by buying out Merdes from the attorney's lien.

In January 1995, in response to a motion by Merdes, the superior court issued an order confirming the Arbitration Panel's award of fees and entered judgment for attorney's fees to Merdes against Leisnoi. That same year, Leisnoi made payments totaling $100,000. It continued to make annual $100,000 payments for the next five years, followed by two $50,000 payments in October 2001 and April 2002. (These $50,000 payments covered the installment due September 1, 2001, which Leisnoi had not paid when it was due.) At that point, Leisnoi, which still had payments outstanding to cover the substantial interest accrued on the judgment, ceased making payments. Leisnoi later explained that "the continued expense of litigation in defense of its property . . . prevented it from making further payment." The obligation under judgment went into default as of September 1, 2002.

Over the next several years, Merdes attempted to negotiate with Leisnoi regarding its unpaid fees. Leisnoi appears to have been open to negotiation, and it repeatedly thanked Merdes for being patient and indicated that payments would be forthcoming when funds were available. For example, in April 2002, an attorney representing Leisnoi wrote to Merdes,

I want to thank you in advance for your patience. As you know, [Leisnoi is] still in difficult financial circumstances, but there is hope that this picture may change. If so, I will be recommending to the Board that the remaining amount

outstanding be paid in full [if] and when funds are available to do so.

Leisnoi generally did not dispute the validity of the judgment awarded to Merdes and actively proposed settlement arrangements.[6] Merdes did not pursue execution during this period; Ward Merdes explained in an affidavit, "I have held-off execution largely because of negotiations with Leisnoi, Inc., and because it was unclear that Leisnoi, Inc. would even continue to exist — until its recent success in the Stratman decertification litigation.  Prudence has dictated that Merdes, by necessity, seek to avoid . . . direct involvement in Stratman's protracted litigation with Leisnoi, Inc."

Merdes recorded the 1995 superior court judgment against Leisnoi in the Kodiak Recording District in May 2007.  On October 6, 2008, the Ninth Circuit ruled in favor of Leisnoi in its litigation against Stratman.[7]  Merdes moved for the superior court to issue a writ of execution on January 27, 2009.  Leisnoi opposed the motion, arguing that Merdes had not shown just and sufficient cause for failing to seek a writ of execution within five years of entry of judgment.  Leisnoi also moved to expunge the notice of attorney lien and judgment lien filed by Merdes.  Leisnoi subsequently moved for relief from the 1995 judgment under Civil Rule 60(b), arguing that the judgment was void under 43 U.S.C. § 1621(a), that enforcement of the judgment was no longer just or equitable, and that Leisnoi's prior board of directors failed to properly protect the

---

[6]    Leisnoi's president commented in a February 2008 letter that "[t]he corporation did not agree with the arbitration and had many questions regarding the outcome.  To date we have paid your firm well over [$]300,000.  We feel your firm has been more than compensated."   However, Merdes and Leisnoi's lawyer later corresponded regarding further satisfaction of the judgment by means of a transfer of Leisnoi's interest in a joint venture.

[7]    *Stratman v. Leisnoi, Inc.*, 545 F.3d 1161 (9th Cir. 2008).

interests of the Native corporation. Merdes replied to Leisnoi's opposition and opposed the Rule 60(b) motion.

On January 13, 2010, the superior court issued an order denying Leisnoi's Rule 60(b) motion, granting Merdes's motion to execute, and granting Leisnoi's motion to expunge the judgment lien and attorney lien. Leisnoi subsequently settled the claims of the other attorneys hired by Merdes. In July 2010, Leisnoi paid Merdes $643,760, the remaining balance owed. Leisnoi claims that it "was forced to borrow the funds" to pay and did so to remove clouds from its land title "[s]o that it could pursue business opportunities." Leisnoi now appeals the superior court's January 2010 order.

## III.  STANDARD OF REVIEW

"The standard for review of an order denying a Rule 60(b) motion is whether the superior court abused its discretion. Reversal is justified only if this court concludes the trial court was clearly mistaken."[8]  "We will find an abuse of discretion only where the record as a whole leaves us with a definite and firm conviction that a mistake has been made."[9]  However, "no question of the lower court's discretion is presented by a Rule 60(b)(4) motion [seeking relief from a void judgment] because the validity of a judgment is strictly a question of law."[10]  We review questions of law de novo.[11]

---

[8]      *Grothe v. Olafson*, 659 P.2d 602, 611 (Alaska 1983) (citing *McCracken v. Davis*, 560 P.2d 771 (Alaska 1977)).

[9]      *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009).

[10]     *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974).

[11]     *See, e.g.*, *Jacob v. State, Dep't of Health and Soc. Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) ("We apply our independent judgment to questions of law, adopting 'the rule of law most persuasive in light of precedent, reason, and policy.' " (quoting
(continued...)

The superior court's decision to issue a writ of execution more than five years after entry of judgment is a mixed question of law and fact.[12] Questions of law are reviewed de novo, and questions of fact are reviewed for clear error.[13]

## IV.  DISCUSSION

### A.  Leisnoi Did Not Waive Its Right To Appeal By Paying The Judgment Against It.

Merdes argues that Leisnoi waived its right to appeal by voluntarily satisfying the judgment against it in July 2010.  Merdes contends that Leisnoi's "cryptic unsworn assertion" that it paid the judgment "so that it could pursue business opportunities" is insufficient to overcome the presumption of voluntary payment, and further, that Leisnoi could have deposited its funds into the registry of the court or otherwise indicated that it was paying under protest.  Merdes cites to a number of cases from other jurisdictions for the proposition that "when a judgment debtor voluntarily satisfies the judgment in full, he waives any right to appeal."[14]  Leisnoi replies that it had limited options in response to Merdes's pursuit of execution upon the judgment:  It could

---

[11](...continued)
*Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979))).

[12]     *McLaughlin v. Okumura*, 223 P.3d 93, 97 (Alaska 2009) (citing *Brotherton v. Brotherton*, 142 P.3d 1187, 1189 (Alaska 2006)).

[13]     *Id.*

[14]     *See, e.g.*, *Haberer v. Newman*, 549 P.2d 975, 976 (Kan. 1976) (holding that a party who voluntarily complied with trial court judgment by surrendering possession of real estate could not obtain appellate review); *Ramsey Fin. Corp. v. Haugland*, 719 N.W.2d 346, 350 (N.D. 2006) (holding that "voluntary payment of or acquiescence in a judgment waives the right to appeal"); *Mitchell v. Lindly*, 351 P.2d 1063, 1067 (Okla. 1960) (holding that a judgment, once satisfied, may not be vacated, "especially when . . . the satisfaction is not claimed to have been involuntary or made under any mistake . . . of fact").

do nothing and allow Merdes to collect the judgment; it could seek a stay of enforcement of the judgment by posting a supersedeas bond; or it could pay the judgment. Leisnoi characterizes the first two options as so undesirable — based on both the potential "embarrassment" and disruption of its business associated with involuntary collection procedures and the high cost of posting a supersedeas bond — that it had no choice but to pay the judgment.

We have not directly discussed the question when payment of a judgment will result in waiver of the right to appeal. Some jurisdictions hold that payment of an adverse judgment is compulsory.[15] Thus, payment of such a judgment is not "voluntary"

---

[15]    *See Stone v. Regents of Univ. of Calif.*, 92 Cal. Rptr. 2d 94, 100 (Cal. App. 1999) (" '[P]ayment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payer of his right to appeal . . . unless payment be by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination.' " (quoting *Reitano v. Yankwich*, 237 P.2d 6 (Cal. 1951))); *Long v. Tranka*, 496 N.E.2d 1238, 1240 (Ill. App. 1986) ("[I]n an ordinary civil case a judgment debtor does not lose the right to appeal by paying the amount of the judgment since payment is considered to be compulsory, even if made prior to execution."); *Dreamers, LLC v. Don's Lumber & Hardware, Inc.*, 366 S.W.3d 381, 384 (Ky. 2011) (quoting *Moss v. Smith*, 361 S.W.2d 511, 514 (Ky. 1962) and citing *Stairs v. Riley*, 208 S.W.2d 961 (Ky. 1948)) (stating it is clear that payment of an adverse judgment does not thereby waive the right to appeal but that payment can waive the right to appeal where the payment is part of a settlement or compromise); *see also FCC Constr. Inc. v. Casino Creek Holdings, Ltd.*, 916 P.2d 1196, 1198-99 (Colo. App 1996) (citing *Reserve Life Ins. Co. v. Frankfather*, 225 P.2d 1035 (Colo. 1950)) (holding that compliance with court order for a foreclosure sale was not voluntary, though defendant-appellant did not seek a stay of the sale or redeem property, because "mere compliance with court decree, in itself, does not demonstrate voluntary compliance"). *See generally* E.H. Schopler, Annotation, *Defeated Party's Payment or Satisfaction of, or Other Compliance with, Civil Judgment as Barring His Right to Appeal*, 39 A.L.R.2d 153, § 5[b] (1955, Supp. 2012) (stating that most jurisdictions conclude that payment of an enforceable judgment before issuance of execution does not, in itself, bar the payer's right to appeal).

and only waives the right to appeal if the payment was part of a compromise or settlement or if payment makes it impossible to render effective relief.[16] Other jurisdictions hold that mere payment of an adverse judgment before the issuance of an execution may bar an appeal.[17] We agree with the U.S. Supreme Court that "[t]here can

---

[16]      *See Graddick v. Newman*, 453 U.S. 928, 945 n.1 (1981) (citing *Bakery Drivers Union v. Wagshal*, 333 U.S. 437, 442 (1948)); *Cahill v. New York, N. H. & H. R. Co.*, 351 U.S. 183, 184 (1956); *Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1121 (8th Cir. 2012) (citations omitted); *Stanton Rd. Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1020 (9th Cir. 1993) (citing *U.S. for Use of Morgan & Son Earth Moving, Inc. v. Timberland Paving & Constr. Co.*, 745 F.2d 595, 598 (9th Cir. 1984)); *Elkin v. Fauver*, 969 F.2d 48, 54 (3d Cir. 1992) (citations omitted); *Matter of Latham*, 823 F.2d 108, 111 (5th Cir. 1987) (citing *Cahill*, 351 U.S. at 183); *Hill v. Whitlock Oil Servs., Inc.*, 450 F.2d 170, 172 (10th Cir. 1971) (citations omitted); *Uyeda v. Brooks*, 348 F.2d 633, 635 (6th Cir. 1965); *Del Rio Land, Inc. v. Haumont*, 514 P.2d 1003, 1006 (Ariz. 1973) (citations omitted) (holding that involuntary payment would not bar appeal, and "the existence of the judgment is a sufficient condition and threat which, together with other factors, may be sufficient to show that the compliance was involuntary"); *Stone*, 92 Cal. Rptr. 2d at 100; *Grant v. Wester*, 679 So. 2d 1301, 1305 n.4 (Fla. Dist. App. 1996); *Long*, 496 N.E.2d at 1240; *Dreamers*, 366 S.W.3d at 384 (citations omitted); *Fitzgerald Bros. Brewing Co. v. 825 Broadway Rest.*, 20 N.Y.S.2d 192, 193 (N.Y. App. Div. 1940) (citations omitted); *Redevelopment Comm'n of Winston-Salem v. Weatherman*, 208 S.E.2d 412, 415 (N.C. 1974);  *Heer v. State*, 432 N.W.2d 559, 564-65 (S.D. 1988); *see also Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1057-58 (7th Cir. 1998); *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 914-15 (1st Cir. 1983); *FCC Constr. Inc.*, 916 P.2d at 1198-99 (citations omitted).  *See generally* Schopler, *supra* note 15.

[17]      *See Imperial Body Works, Inc. v. Nat'l Claims Serv., Inc.*, 279 S.E.2d 534, 535 (Ga. App. 1981) (holding that compliance with judgment constituted waiver when there was no execution); *Haberer*, 549 P.2d at 979 (holding that compliance with a judgment, even after issuance of an execution, may bar an appeal because "anything which savors of acquiescence in a judgment cuts off the right of appeal"); *Braswell v. Morris*, 275 So.2d 189, 192 (La. App. 1972) (holding that payment of judgment waived the right to appeal because the payment contained no indication of intent to reserve the

(continued...)

be no question that a debtor against whom a judgment for money is recovered may pay that judgment and bring a writ of error to reverse it, and if reversed can recover back his money."[18]  As the Sixth Circuit explained,

> [A] defeated party's compliance with a . . . [trial] court ruling does not bar him from appealing unless his compliance has made it impossible for the appellate court to grant effective relief.  This is true even if the defeated party has failed to avail himself of an opportunity to obtain a stay of the proceedings or a supersedeas.[19]

We conclude a rule providing that payment of an adverse judgment is involuntary properly protects the judgment debtor's right to appeal and the creditor's interest in prompt payment.  This rule also minimizes the accrual of interest and the cost of enforcing a judgment.[20]

---

[17](...continued)
right to appeal); *Tong v. Miller*, 204 N.W. 108, (Mich. 1925); *Ramsey Fin. Corp.*, 719 N.W.2d at 349-50 (holding that voluntary payment waives the right to appeal and a presumption arises that payment of a judgment was voluntary when there is no showing besides that there was acquiescence to a judgment); *Lyon v. Ford Motor Co.*, 604 N.W.2d 453, 458 (N.D. 2000) (concluding that Ford had voluntarily paid the judgment when Ford paid before any execution or legal proceedings to collect the judgment); *Jackson v. S.C. State Fair Ass'n*, 96 S.E. 116, 116 (S.C. 1918).  *See generally* Schopler, *supra* note 15, at § 5[c].

[18]    *Mancusi v. Stubbs*, 408 U.S. 204, 207 (1972) (quoting *Dakota Cnty. v. Glidden*, 113 U.S. 222, 224 (1885)) (internal quotation marks omitted) (holding that compliance with judgment did not bar appeal even though petitioner had not sought a stay), *superseded by statute on other grounds*; *see also Bakery Drivers Union*, 333 U.S. at 442 (holding that when the union lifted its boycott to comply with the injunction, it did not thereby bar appeal).

[19]    *Uyeda*, 348 F.2d at 635.

[20]    *See Peoples Trust & Sav. Bank v. Sec. Sav. Bank*, 815 N.W.2d 744, 754
(continued...)

Here, Merdes has failed to show that Leisnoi's payment indicated an intent to compromise or settle. And we can discern no intent of Leisnoi to waive its right to appeal the judgment. Because we hold that payment of an adverse judgment entered by a court in the absence of a compromise or settlement is involuntary as a matter of law, we conclude that Leisnoi's payment was involuntary, and Leisnoi did not waive its right to appeal.

**B.** **The Arbitration Panel's Fee Award, The Superior Court's Entry Of Judgment, And The Superior Court's Issuance Of The Writ Of Execution Violated 43 U.S.C. § 1621(a).**

Leisnoi argues that its fee agreement with Merdes, the Arbitration Panel's fee award, the superior court's 1995 entry of judgment, and the superior court's 2010 issuance of the writ of execution violated 43 U.S.C. § 1621(a). That statute, part of ANCSA, provides:

> None . . . of the lands granted by [ANCSA] to the Regional and Village Corporations and to Native groups or individuals shall be subject to any contract which is based on a percentage fee of the value of all or some portion of the settlement granted by this Act. Any such contract shall not be enforceable against any Native . . . or any Regional or Village Corporation and the revenues and lands granted by this Act shall not be subject to lien, execution or judgment to fulfill such a contract.[21]

---

[20](...continued)
(Iowa 2012); *Grand River Dam Auth. v. Eaton*, 803 P.2d 705, 709 (Okla. 1990) (citations omitted).

[21]     43 U.S.C. § 1621(a) (2006).

Leisnoi contends that this statute prohibited the contingency fee contract and the superior court's actions ("execution or judgment to fulfill such a contract"[22]), making it error for the superior court to enter judgment on the fee award and to grant Merdes's motion for issuance of a writ of execution. The preliminary question is whether the fee agreement, as interpreted by the Arbitration Panel, violated 43 U.S.C. § 1621(a). Leisnoi did not raise this issue before the Arbitration Panel.

### 1. Arbitration award

As Leisnoi points out, the superior court's 2010 order implied that the statute was applicable to the contract between Merdes and Leisnoi, as interpreted by the Arbitration Panel: The superior court noted that "the Arbitration Award decision was clear that the monetary award was based on its estimate of 30% of the value of Leisnoi's land. There is no question that the $721,000 [award to Merdes] was 'based on a percentage fee of the value of all or some portion of the settlement granted.' "[23] Merdes, on the other hand, argues that Leisnoi "successfully convinced the Arbitration Panel that the fee agreement is unenforceable . . . as written" and "[t]he fact that the Panel struck down the agreement for reasons other than one based on § 1621(a) does not change the fact that Leisnoi got what it petitioned for: a ruling abrogating the agreement's percentage-fee term and an independently calculated monetary fee based on fairness and reasonableness." Merdes contends that section 1621(a) does not take away the power of the Arbitration Panel or superior court to award reasonable attorney's fees, and claims that Leisnoi's position implies Merdes has already received sufficient payment.

---

[22]     *Id.*

[23]     The superior court went on to conclude that, although the statute was applicable, it did not deprive the court of jurisdiction to decide the claim and therefore did not render the judgment void under Civil Rule 60(b)(4) or block the issuance of a writ of execution.

Leisnoi is correct that the Arbitration Panel's award fell within the parameters prohibited by 43 U.S.C. § 1621(a). And it is clear that the original agreement between Merdes and Leisnoi violated the statute: It was based on a percentage fee of the value of Leisnoi's ANCSA lands. Contrary to Merdes's argument that the Arbitration Panel abrogated the contract's percentage fee award and "independently calculated [a] monetary fee," the Arbitration Panel itself stated that it had "specifically refused to void the contract . . . . Rather . . . the arbitration award interpreted the contingent fee contract to not be a 30% ownership interest in land, but a security interest or lien against the land . . . ." In other words, the Arbitration Panel essentially enforced the contingency fee contract — making what it viewed as a minor adjustment to avoid the problems associated with giving Merdes co-ownership in the land itself — and thus violated 43 U.S.C. § 1621(a). (The adjustment made by the Arbitration Panel was arguably an independent violation of section 1621(a) to the extent it subjected ANCSA lands to a lien in order to fulfill the contingency fee contract.)

## 2. Entry of judgment

Leisnoi argues that the 1995 judgment was entered in violation of 43 U.S.C. § 1621(a)'s prohibition on "judgment[s] to fulfill . . . contract[s] [for ANCSA lands]." Merdes responds that Leisnoi failed to present this argument to the Arbitration Panel or superior court before the 1995 judgment was entered, effectively waiving it. Merdes also generally contends that the statute does not deprive states of their power to award reasonable attorney's fees.

Whether the entry of judgment on the illegal contract constitutes a separate violation of 43 U.S.C. § 1621(a) depends on whether the statute is viewed as creating a defense that must be raised by the parties or, alternatively, an independent obligation on the court's part to decline to enforce the illegal contingency fee contract regardless of what the parties argue. Leisnoi takes the latter position, arguing that the statute's

characterization of contingency fee agreements as unenforceable reflects an intent to protect Alaska Natives and Native corporations from the effects of contingency fee contracts "even if they fail[], by incompetence, neglect, mistake or otherwise, to raise the statute as a defense in an action to enforce such agreements."

We have held that courts have "no power, either in law or equity, to enforce an agreement which directly contravenes a legislative enactment,"[24] and we have affirmed the superior court's refusal to enforce certain contracts on these grounds in cases where the illegality of a contract was raised by one of the parties.[25] While Alaska case law does not appear to address whether the superior court can or must decline to enforce illegal contracts where illegality is *not* raised, this issue has been addressed by other authorities. The Restatement First of Contracts provides:

> Illegality, if of a serious nature, need not be pleaded. If it appears in evidence the court of its own motion will deny relief to the plaintiff. The defendant cannot waive the defense if he wishes to do so. Indeed, if the court suspects illegality, it may examine witnesses and develop facts not brought out by the parties, and thereby establish illegality that precludes recovery by the plaintiff.[26]

---

[24]     *Pavone v. Pavone*, 860 P.2d 1228, 1231 (Alaska 1993) (citing *Hemmen v. State*, 710 P.2d 1001, 1003 (Alaska 1985)).

[25]     *See, e.g.*, *Jimerson v. Tetlin Native Corp.*, 144 P.3d 470, 472-74 (Alaska 2006) (affirming the superior court's refusal to enforce a settlement agreement that a Native corporation claimed was unenforceable under ANCSA 7(h)(1)(B)'s prohibition on alienation of ANCSA stock); *Pavone*, 860 P.2d at 1232 (affirming the superior court's holding that a father could not force his son to return a fishing permit because the son's oral promise to do so contravened the permit retransfer restrictions of AS 16.43.150(g)(2), where the son raised the illegality of the contract as a defense).

[26]     RESTATEMENT (FIRST) OF CONTRACTS § 600 cmt. a (1932). The Restatement goes on: "If, however, the illegality is not serious, and neither public policy
(continued...)

-16-                                                    6747

Decisions from other jurisdictions have similarly stated that courts may have an independent obligation not to enforce contracts that are contrary to statute or illegal on public policy grounds.[27] In some cases, courts have drawn a distinction between illegality that is not apparent on the face of the contract (e.g., illegality arising from circumstances outside the four corners of the contract), which they have held must be pleaded as a defense, and illegality that appears in the contract, which need not be pleaded.[28]

---

[26](...continued)
nor statute clearly requires denial of relief, courts refuse to give effect to facts showing illegality unless those facts . . . are pleaded by the defendant." *Id.*; *see also* 5 WILLISTON ON CONTRACTS § 12:5 (4th ed. 2009).

[27] *See, e.g.*, *Bovard v. Am. Horse Enters., Inc.*, 247 Cal. Rptr. 340, 343 (Cal. App. 1988) ("Whenever a court becomes aware that a contract is illegal, it has a duty to refrain from entering an action to enforce the contract."); *Russell v. Soldinger*, 131 Cal. Rptr. 145, 150 (Cal. App. 1976) ("It is . . . well settled that if the question of illegality develops during the course of a trial, a court must consider it whether pleaded or not . . . ."); *Quiring v. Quiring*, 944 P.2d 695, 701-02 (Idaho 1997) ("[I]n Idaho a court may not only raise the issue of whether a contract is illegal *sua sponte*, but it has a duty to raise the issue of illegality, whether pled or otherwise, at any stage of the litigation.") (internal citations omitted); *Jones v. Chavalier*, 579 So.2d 1217, 1218 (La. App. 1991) (holding that "a contract which violates a rule of public order . . . is absolutely null, and unenforceable" and "[t]he absolute nullity of such a contract may be declared by the court on its own initiative") (citing LA. CIV. CODE ANN. art. 2030 (1985)).

[28] *See Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 477 (9th Cir. 1969) ("As no illegality of the contract is disclosed by the plaintiff's complaint or the contract itself, illegality is an affirmative defense and defendants-appellants have the burden of pleading and proof."); *Flynn Bros., Inc. v. First Med. Assoc.*, 715 S.W.2d 782, 784 (Tex. App. 1986) ("Where the illegality of the contract appears on the face of the contract or the illegality appears from the evidence necessary to prove the contract, an affirmative pleading of illegality is unnecessary and the question of illegality can be raised at any stage of the proceeding, or may be raised by the appellate court sua
(continued...)

Here, the illegality of the contingency fee agreement between Merdes and Leisnoi is "of a serious nature": The agreement directly violates an important federal statute, the Alaska Native Claims Settlement Act, jeopardizing the Native property interests that 43 U.S.C. § 1621(a) is intended to protect. Under the standards used by most jurisdictions, the fact that Leisnoi did not plead illegality before the Arbitration Panel or the superior court in opposition to Merdes's 1995 motion to enforce the fee award does not amount to waiver of 43 U.S.C. § 1621(a)'s prohibition against ANCSA attorney fee contingency contracts. Thus, the entry of judgment constituted a violation of 43 U.S.C. § 1621(a). While Merdes is correct that section 1621(a) does not deprive an arbitration panel or state court of the power to independently award reasonable attorney's fees, that is not what happened in this case; rather, by entering judgment pursuant to the arbitration award, the superior court enforced a contingency fee contract that is illegal under ANCSA.

### 3. Writ of execution

This same prohibition on contingency fee contracts pertaining to ANCSA lands and the judgment thereon applied to the superior court's 2010 issuance of its writ of execution on the illegal judgment. The issuance of the writ of execution violated 43 U.S.C. § 1621(a) just as the 1995 entry of judgment did: This statute provides both

---

[28](...continued)
sponte."); 5 WILLISTON ON CONTRACTS § 12:5 (4th ed. 2009). The First Restatement of Contracts provides the following illustration of when an illegality must be pleaded because it is not apparent on the face of the contract: "A and B enter into a written bargain for the erection of a building. The bargain is legal on its face, but it is orally agreed that B, the builder, may use for a small portion of the work materials not permitted by the building law. In an action on the contract, after the erection of the building, the illegality cannot be proved unless it has been pleaded." RESTATEMENT (FIRST) OF CONTRACTS § 600 cmt. a, illus. 1 (1932).

that "[n]one . . . of the lands granted by [ANCSA] to the Regional and Village Corporations and to Native groups . . . shall be subject to any contract which is based on a percentage fee of the value of . . . some portion of the settlement granted by this Act" and "[a]ny such contract shall not be enforceable . . . [and] shall not be subject to lien, *execution* or judgment to fulfill such a contract." (Emphasis added.)[29]

Just as it was error for the Arbitration Panel to make its fee award and for the superior court to enter judgment on that award in 1995, it was error for the superior court in 2010 to issue an order purporting to authorize Merdes to execute on the illegal judgment. We therefore reverse the court's order issuing the writ of execution.

### C. Leisnoi Was Not Entitled To Relief From Judgment Under Civil Rule 60(b).

Because we hold that the writ of execution was illegally issued, Leisnoi is entitled to recover the balance it paid on the judgment after the writ of execution was issued. However, our discussion does not end here. Leisnoi argues that it is entitled to relief from the 1995 judgment under Civil Rule 60(b), which would entitle Leisnoi to recover all payments made to Merdes following the 1995 entry of judgment. We must therefore determine whether Leisnoi is entitled to relief under Civil Rule 60(b).

Civil Rule 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void;

---

[29] Leisnoi raised illegality in opposition to Merdes's motion for issuance of a writ of execution; Merdes does not argue that Leisnoi waived this argument.

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Leisnoi filed a Civil Rule 60(b) motion in the superior court, arguing that it was entitled to relief pursuant to Rule 60(b)(4) or 60(b)(6) because: (1) the circumstances surrounding the 1995 entry of judgment had changed such that enforcement of the judgment was no longer just or equitable; and (2) the contingency fee contract and the entry of judgment violated 43 U.S.C. § 1621(a), rendering both void. Leisnoi also made several arguments as to why it was not equitable to enforce the judgment because the judgment should have been "considered satisfied with the payments made on the obligation to date," effectively arguing the superior court should vacate the judgment under Rule 60(b)(5). The superior court denied the motion.

Leisnoi argues on appeal that the Arbitration Panel's violation of 43 U.S.C. § 1621(a) calls for relief under Rule 60(b)(4) or, alternatively, 60(b)(6), and that the unanticipated duration of the Stratman litigation and Leisnoi's resulting inability to generate income from its property justify relief under Rule 60(b)(5). Merdes responds that, if Leisnoi had an objection to the judgment against it, there were a number of mechanisms by which it could have directly attacked Merdes's judgment at various stages of the proceedings (e.g., by moving to vacate the Arbitration Panel's award, by opposing Merdes's motion for judgment on the award, or by moving to reconsider the judgment in light of 43 U.S.C. § 1621(a)), rather than waiting 15 years to bring a collateral Rule 60(b) motion. Under the circumstances, Merdes contends, Leisnoi's Rule 60(b) challenge to the judgment against it was an improper and untimely appeal on

the merits, at odds with this court's emphasis on judicial economy and procedures under the Appellate Rules.

Rule 60(b) provides that a motion for relief from a judgment "shall be made within a reasonable time, and for clauses (1), (2), and (3) not more than one year after date of notice of the judgment or orders." Leisnoi seeks relief from judgment under Rule 60(b)(4), (5), and (6) only; thus, the one-year time limit does not apply and the time to file the 60(b) motion need only be "reasonable," at least with respect to clauses (5) and (6).

### 1. Leisnoi was not entitled to relief under Rule 60(b)(4).

Rule 60(b)(4) provides relief from a void judgment. We have held that "[t]his rule of relief applies without time limitations because a void judgment cannot gain validity simply by the passage of time,"[30] and "even the requirement that the motion be made within a reasonable time, 'which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.' "[31] Based on this language, we hold Leisnoi's Rule 60(b)(4) motion, at least conceptually, is not untimely. The critical question is whether the superior court's 1995 judgment issued in violation of 43 U.S.C. § 1621(a) was void — and thus amenable to a Rule 60(b)(4) challenge — or merely voidable, and not subject to such a challenge.

Leisnoi argues that its contract with Merdes was illegal under 43 U.S.C. § 1621(a) and therefore void, which in turn renders the judgment entered on

---

[30] *State, Dep't of Revenue, Child Support Enforcement Div. v. Maxwell*, 6 P.3d 733, 736 (Alaska 2000).

[31] *Kennecorp Mortg. & Equities, Inc. v. First Nat'l Bank of Fairbanks*, 685 P.2d 1232, 1236 (Alaska 1984) (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2862 at 197 (1973)); *see also Burrell v. Burrell*, 696 P.2d 157, 163 n.11 (Alaska 1984).

the contract void and subject to vacation under Rule 60(b)(4). Leisnoi also contends that, under section 1621(a), "the actual entry of judgment was itself a violation of federal law by the trial court." Leisnoi acknowledges that this case differs from typical Rule 60(b)(4) cases "in which relief from judgment is appropriate because it is void for lack of jurisdiction." While conceding that the Arbitration Panel and the superior court had subject matter jurisdiction over the fee dispute, Leisnoi nonetheless claims that those tribunals' lack of legal authority to enforce the fee contract (because of 43 U.S.C. § 1621(a)) creates a situation analogous to one where the court lacks jurisdiction. Leisnoi also argues that the trial court "usurped power" in entering judgment against Leisnoi.

Merdes responds that Rule 60(b)(4) applies only where the trial court "lacks fundamental jurisdiction" and "usurps its statutory authority to . . . render a decision in the first instance" — which Merdes contends did not occur here. Merdes argues that we and other courts have not found such a lack of jurisdiction even where there were significant irregularities at the trial court level or even where the trial court acted in violation of federal statute.

The superior court in this case concluded that 43 U.S.C. § 1621(a) does not "deprive[] a state trial court of subject matter jurisdiction to enter judgment [a]ffecting title to ANCSA grant revenues or real property"; the court based this conclusion on the fact that "[t]he Alaska Supreme Court has previously exercised authority to decide whether ANCSA exemptions apply to particular cases and has thus vindicated this court's jurisdiction to decide such a claim."

> We have held that a judgment is void only where the court that issued it
>
> had no jurisdiction to subject the parties or the subject matter
> to its control, or where the defendant was not given proper
> notice of the action and opportunity to be heard, or where the
> judgment was not rendered by a duly constituted court with

competency to render it, or where there was a failure to comply with such requirements as are necessary for the valid exercise of power by the court.[32]

The validity of a Rule 60(b)(4) motion is strictly a question of law.[33] In the interests of finality, the concept of void judgments is narrowly construed.[34]

A judgment is not void merely because it is erroneous.[35] As the U.S. Supreme Court recently observed, "[f]ederal courts considering [identical federal] Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction."[36] The First Circuit characterized the distinction between "total want of jurisdiction" and "an error in the exercise of jurisdiction" as "essential"; only the former will render a judgment void.[37]

---

[32] *Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966) (internal citations omitted).

[33] *Aguchak v. Montgomery Ward Co., Inc.*, 520 P.2d 1352, 1354 (Alaska 1974).

[34] *United States v. Berenguer*, 821 F.2d 19, 22 (1st Cir. 1987); *see* 12 JAMES MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 60.44, at 60-149 (3d ed. 2003).

[35] *See DeNardo v. State*, 740 P.2d 453, 457 (Alaska 1987); *see also* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (2d ed. 1995).

[36] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1377 (2010) (internal quotation marks omitted).

[37] *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir. 1990) (quoting *Lubben v. Selective Serv. Sys. Local Bd. No.* 27, 453 F.2d 645, 649 (1st Cir. 1972)). Several federal courts have considered whether a court is divested of jurisdiction pursuant to Federal Rule of Civil Procedure 60(b)(4) when it acts in violation
(continued...)

We conclude that although entered in error, the 1995 judgment was not void for lack of subject matter jurisdiction. The superior court is the trial court of general jurisdiction, with original jurisdiction over civil matters.[38] It has jurisdiction to confirm an arbitration award and enter judgment pursuant to AS 09.43.110 and AS 09.43.140. Title 43 U.S.C. § 1621(a) does not purport to limit this authority. Unquestionably, the superior court initially had subject matter jurisdiction to determine whether the arbitration award was valid. Leisnoi's argument can succeed only if the superior court was somehow divested of jurisdiction when it erroneously entered judgment on the award. But as we have explained, an erroneous judgment is not tantamount to a void judgment; the superior court's entry of judgment, while erroneous, did not render the

---

[37](...continued)
of governing law. In *V.T.A., Inc. v. Airco, Inc.*, the Tenth Circuit analyzed whether the district court had jurisdiction to enter a consent decree securing monopoly rights for a party prior to the issuance of a valid patent, where state and federal law potentially prohibited such issuance. 597 F.2d 220 (10th Cir. 1979). The court concluded that "[e]ven if the parties' consent decree does technically run afoul of federal patent law principles, the problem would be one of relief from an erroneous judgment, not a void one. The district court had requisite jurisdiction over the parties and over the subject matter." *Id.* at 226. Similarly, in *United States v. Boch Oldsmobile*, the First Circuit concluded that even if a consent decree was entered in violation of the Federal Trade Commission Act, the district court retained power to enter judgment: "Consent decrees that run afoul of the applicable statutes lead to an erroneous judgment, not to a void one." *Boch Oldsmobile*, 909 F.2d at 662. *See also Walling v. Miller*, 138 F.2d 629, 631 (8th Cir. 1943) (holding that, even if suit was brought by someone not authorized to do so under the Fair Labor Standards Act, errors in the resulting court order "did not go to the jurisdiction or power of the court but to the merits only" and thus did not render the judgment void); MOORE, *supra* note 34, § 60.44, at 60-150 ("[I]f a federal court misinterprets a statute and, in the process, enjoins conduct that is actually legal, that does not render the judgment void.").

[38]     AS 22.10.020.

judgment void or divest the court of jurisdiction.[39] Merdes properly notes that were we to adopt a different rule, "[v]irtually any judgment could be collaterally attacked as void" merely because a trial court issued a ruling in violation of law.

Leisnoi also argues that the trial court "usurped power" in entering judgment against Leisnoi. The "usurpation of power" standard for voidness largely mirrors the subject matter jurisdiction standard: It is to be "rarely and sparingly employed," with application "limited to cases which involve an arrogation of authority which the court clearly lacks."[40] "In order to protect the finality of judgments, care must be taken to distinguish between true instances of usurpation of power, and instances where the court has merely committed prejudicial error."[41]

Our conclusion is the same under the "usurpation of power" standard as under our subject matter jurisdiction analysis: The superior court's judgment, while

---

[39]    We recognize that our holding potentially conflicts with our decision in *Cline v. Cline*, where we held that an order awarding 62% of a military spouse's pension to a non-military spouse was void for lack of subject matter jurisdiction because it violated the cap on awards set by federal statute. 90 P.3d 147, 156 (Alaska 2004). Although we seriously question whether *Cline* was correctly decided, we decline to revisit its merits today because the parties did not fully brief the case. (Merdes mentions *Cline* in a footnote, and Leisnoi does not brief it at all.) At least one court has disagreed with our analysis in *Cline*. *Coon v. Coon*, 614 S.E.2d 616, 617-18 (S.C. 2005) (holding that the federal statutory limitation "supplants state domestic-relations law pursuant to the Supremacy Clause of the United States Constitution, but it does not pre-empt state-court subject-matter jurisdiction") (footnotes omitted).

[40]    *Kenai Peninsula Borough v. English Bay Vill. Corp.*, 781 P.2d 6, 10 (Alaska 1989) (finding no usurpation of power where the superior court issued a default judgment in the absence of a prior valid entry of default and without a valid application for default or for a default judgment).

[41]    *Id.*

entered in error, did not amount to an arrogation of authority. The circumstances do not justify disturbing a judgment that has stood for over 17 years.

The superior court correctly ruled that Leisnoi was not entitled to relief under Rule 60(b)(4).

## 2. Leisnoi was not entitled to relief under Rule 60(b)(5) or (b)(6).

Unlike Rule 60(b)(4), which applies without time limitations, a Rule 60(b)(5) or 60(b)(6) motion must be made within a "reasonable time." We have concluded that "as a matter of law, a period of almost seven and one-half years is not a reasonable time within which to file a motion for relief under section (b)(5-6) [of Civil Rule 60]."[42] This holding is consistent with our concern that Rule 60(b) not be considered "a substitute for a party failing to file a timely appeal" or a means of "allow[ing] relitigation of issues that have been resolved by the judgment."[43]

The superior court found that the reasonable time limitation was not satisfied with regard to Rule 60(b)(6) because Leisnoi failed to offer any excuse "for not seeking to vacate the judgment for fourteen years." We conclude that the superior court did not abuse its discretion in denying Leisnoi relief. Leisnoi did not challenge the 1995 judgment on the basis of Rule 60(b)(6) until filing its May 2009 Rule 60(b) motion — a period of over 14 years. Leisnoi's Rule 60(b)(6) motion was untimely, and we need not consider whether relief would otherwise be justified under this clause.

The superior court did not address the timeliness of Leisnoi's Rule 60(b)(5) motion but instead ruled on the merits, essentially concluding that the equities did not compel granting Rule 60(b)(5) relief. Leisnoi contends that it is entitled to relief under Rule 60(b)(5) because "the fundamental assumptions made by the arbitration panel

---

[42] *Burrell v. Burrell*, 696 P.2d 157, 163 (Alaska 1984).

[43] *Id*.

and . . . the trial court have proven to be so wrong as to have made the continued enforcement of the judgment unconscionable." Specifically, Leisnoi points to the fact that ongoing litigation with Stratman and the related cloud on title to the corporation's lands prevented it from generating significant income from its property, even as interest continued to accrue on the judgment. It contends that these circumstances made the land less valuable, such that "the actual value received by Leisnoi has proven to be unconscionably less than that awarded by the arbitration panel." Merdes responds that Rule 60(b)(5) does not apply to money judgments because they are not deemed prospective. The superior court agreed with Merdes, noting that while "there is no doubt that Leisnoi had wished for a swifter outcome in its favor," Merdes accepted a case with extremely high risks such that "[t]he interest rate . . . imposed by the Arbitration Award . . . is not extraordinary or outrageous" so as to justify relief under Rule 60(b)(5).

We have held that "clause (5) is typically invoked to obtain relief from declaratory judgments and injunctions whose continued enforcement becomes inequitable. . . . [C]lause (5) is applicable to any judgment having prospective effect."[44] We have also explained that Rule 60(b)(5) "by definition . . . cannot apply to a judgment that simply offers a present remedy for a past wrong."[45] In *Ferguson v. State, Department of Revenue*, we illustrated this difference in the child-support context, noting that "[a] paternity judgment has prospective aspects that can be alleviated under Rule 60(b)(5), because a paternity judgment gives rise to prospective duties, including a duty to pay child support in the future. But each child support payment, as it becomes

---

[44] *Farrell ex rel. Farrell v. Dome Labs.*, 650 P.2d 380, 384 (Alaska 1982).

[45] *Bauman v. Day*, 892 P.2d 817, 829 (Alaska 1995).

due, is a final judgment in its own right."[46]  Accordingly, we affirmed the superior court's judgment, which alleviated only the prospective effects of a vacated paternity judgment.[47]  Under this analysis, the amounts already paid by Leisnoi prior to its final payment on the judgment were in response to a past rather than prospective judgment, and therefore not subject to relief under Rule 60(b)(5).  Even if Leisnoi still had installments on the judgment outstanding, the judgment could not be considered to have "prospective effect."  The amount awarded by the Arbitration Panel and entered as judgment by the superior court offered a "remedy for a past wrong," not an ongoing or recurring remedy; the arrangement for payment in installments was merely an accommodation of Leisnoi's financial situation and did not create prospective duties.[48]

For the foregoing reasons, we conclude that the superior court did not abuse its discretion in denying Leisnoi relief under Rule 60(b)(5) or 60(b)(6).

## V.    CONCLUSION

To summarize, Leisnoi did not waive its right to appeal because its $643,760 payment to Merdes was involuntarily made in response to the 2010 issuance of the writ of execution.  Leisnoi's contingency fee agreement with Merdes violated ANCSA's prohibition against contingency fee agreements, as did the Arbitration Panel's fee award, the superior court's 1995 entry of judgment, and the 2010 writ of execution.

---

[46]    977 P.2d 95, 100 (Alaska 1999).

[47]    *Id.*

[48]    *See Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998) (" 'That a court's action has continuing consequences . . . does not necessarily mean that it has prospective application for the purposes of Rule 60(b)(5).  The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions.' " (quoting *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995))).

The 1995 entry of judgment was voidable, not void, and Leisnoi was not entitled to relief under Civil Rule 60(b)(4), 60(b)(5), or 60(b)(6). Leisnoi is entitled to recover the balance that it paid after the writ of execution was unlawfully issued, but it is not entitled to recover payments made prior to the issuance of the writ of execution. The amount to be repaid should include interest. Merdes may seek to recover any fees it believes are owed under a theory of quantum meruit.

The superior court's order issuing a writ of execution on the 1995 judgment is REVERSED. The superior court's order denying Leisnoi's Civil Rule 60(b) motion to set aside the 1995 judgment is AFFIRMED.