*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PAULETTE HARPER, | ) | |
| | ) | Supreme Court No. S-16488 |
| Appellant, | ) | |
| | ) | Superior Court No. 3VA-15-00059 CI |
| v. | ) | |
| | ) | O P I N I O N |
| BIOLIFE ENERGY SYSTEMS, INC., | ) | |
| and LINKUP MEDIA GROUP OF | ) | No. 7294 – September 14, 2018 |
| COMPANIES, INC., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Valdez, Daniel Schally, Judge pro tem.

Appearances: Eric Auten, Law Office of Eric Auten, Valdez, for Appellant. Brad S. Kane, Kane Law Firm, Los Angeles, California, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.     INTRODUCTION

A woman sued two New York corporations in the superior court in Valdez, alleging violations of her right of publicity and right of privacy. Her claims related to an allegedly false account regarding her recovery from cancer; she discovered the account in a brochure promoting products by BioLife Energy Systems, Inc., while working for BioLife's distributor in Colorado. The defendants filed a motion to dismiss

based on lack of personal jurisdiction, claiming that neither of them has the minimum contacts with Alaska necessary to satisfy due process. The superior court granted the motion, reasoning that although BioLife arguably had some contacts in Alaska, the woman's claims did not relate to those contacts, and the defendants' contacts were insufficient to establish all-purpose jurisdiction. The woman appeals. We affirm.

## II.   FACTS AND PROCEEDINGS

Around May and June 2012, Paulette Harper, who had recently moved from Alaska to Montrose, Colorado, worked for HoneyCombs Herbs and Vitamins for approximately four weeks. HoneyCombs manufactured and distributed herbal and vitamin products on behalf of other companies, including BioLife. While working at HoneyCombs, Harper alleged she saw a brochure from BioLife that included a section entitled "The Herbalist Behind BioLife: Michael Combs"; Combs is Harper's brother, and the write-up about him included an allegedly false account of his organic herb research leading to Harper recovering from cancer.[1] All parties agreed that the brochure was available on BioLife's website. Harper moved back to Alaska in October 2012, and in June 2015 she filed a lawsuit against BioLife and Linkup Media Group of Companies, Inc.,[2] in the superior court in Valdez, alleging violations of her right of publicity and right of privacy and seeking damages for unjust enrichment and punitive damages.

---

[1]    BioLife correctly pointed out to the superior court that the name "Paulette Harper" does not appear in the brochure, which uses only "Paulette." However, the brochure describes "Paulette" as Combs's sister, so Harper can likely be identified from the brochure.

[2]    Harper stated that BioLife was owned by Linkup. BioLife and Linkup responded that they are separate corporations owned by the same CEO and founder, and that Linkup is a flagship corporation of several companies. On appeal, BioLife and Linkup appear to concede that "Linkup is the parent company of [BioLife]." Both companies are New York corporations.

In January 2016 defendants moved to dismiss for lack of personal jurisdiction. They argued that they had "no significant contacts with Alaska" and that "the closest [they] ha[d] come to doing business in Alaska" was when BioLife "sen[t] supplements ordered by a Connecticut resident to a person in Alaska" in 2012. They also argued that the fact that the brochure was posted on BioLife's New York-based website did not subject them to either specific or general personal jurisdiction in Alaska.

Harper opposed the motion. She argued that BioLife's website was highly commercial in nature, allowing customers to purchase products online, and that the drop-down menu for shipping included Alaska as an option, along with the other 49 states "and a long list of nations from Afghanistan to Zimbabwe." In her accompanying affidavit, she alleged that HoneyCombs "place[d] at least several dozen Bio[L]ife orders [on an average day], and some days more than one hundred," and that "[b]ased on the large quantity of orders [she] place[d] during just [her] brief period there, and considering that Bio[L]ife ha[d] been in business for approximately five years, it seem[ed] highly plausible that one or more order[s] could have originated in Alaska." She suggested that jurisdictional discovery was appropriate. She later filed a supplemental affidavit, alleging that she saw "several orders from Alaska." She stated that "[c]onsidering the number of BioLife packages [she] saw destined for Alaska during [her] short time working there, [she assumed] that there were many more before and after [her] time there."

In their reply the defendants argued that Harper was not credible because of the inconsistency between the two affidavits and because Harper's assertions were contradicted by Crystal Combs, the owner of HoneyCombs, who stated that Harper "only taped [boxes] . . . and labels were later applied in the shipping department" and that according to HoneyCombs's records "[t]he only shipment to Alaska was for an order

from a Connecticut customer for delivery in Alaska." They opposed the "undeveloped discovery request."

The superior court issued an order granting the motion to dismiss the lawsuit without prejudice. The court found that the website was "clearly commercial in nature" but seemed to credit the defendants' position that BioLife shipped only one order to Alaska. The court concluded that it lacked general personal jurisdiction over the defendants; it also concluded that it lacked specific personal jurisdiction because "[a]lthough Bio[L]ife arguably did at one time purposefully direct its activities to Alaska residents, the claims at issue in this case do not relate to or arise from those activities."

Harper moved for reconsideration and also filed a formal motion for additional jurisdictional discovery. She argued that "she [was] and ha[d] been an Alaska resident for all periods [of] time relevant to her complaint"[3] and that Alaska was therefore the place of injury. She also argued that she "made specific and credible allegations regarding BioLife's contacts with Alaska" and "clearly provide[d] a good faith basis to believe that there is discoverable information on this question." She included a second supplemental affidavit.

The defendants opposed the motions, arguing among other things that the second supplemental affidavit constituted newly introduced evidence that should not be considered. They argued that Harper failed to explain how the court allegedly misconstrued or misapplied the law of personal jurisdiction and that her affidavits were contradictory.

---

[3]        She provided no support for this argument. According to her supplemental affidavit, she moved from Alaska to Colorado in May 2012 for "a fresh start" and the promise of a full-time job, and she was living and working in Colorado when she discovered the brochure.

The court denied the motions for reconsideration and for jurisdictional discovery. Harper appeals.

## III.   STANDARD OF REVIEW

"We review questions regarding personal jurisdiction de novo because '[j]urisdictional issues are questions of law subject to this court's independent judgment.' We adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy' when it comes to jurisdictional questions."[4]

"When considering the appeal of a motion to dismiss we 'presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-moving party.' "[5]

"We will not overturn an order denying a motion for reconsideration unless there has been an abuse of discretion."[6] Abuse of discretion will be found "when the decision on review is manifestly unreasonable."[7]

---

[4]    *Polar Supply Co. v. Steelmaster Indus., Inc.*, 127 P.3d 52, 54 (Alaska 2005) (alteration in original) (footnote omitted) (quoting *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)); *accord Richter v. Richter*, 330 P.3d 934, 937 (Alaska 2014) (citing *Vanvelzor v. Vanvelzor*, 219 P.3d 184, 187 (Alaska 2009)).

[5]    *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1217 (Alaska 2009) (quoting *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 308 (Alaska 2007)).

[6]    *Baseden v. State*, 174 P.3d 233, 238 (Alaska 2008) (citing *Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 661 (Alaska 2001)).

[7]    *Timothy W. v. Julia M.*, 403 P.3d 1095, 1100 (Alaska 2017) (quoting *Fink v. Municipality of Anchorage*, 379 P.3d 183, 188 (Alaska 2016)).

## IV.  DISCUSSION

### A.  The Superior Court Did Not Err In Dismissing The Action For Lack Of Personal Jurisdiction.

Alaska courts may exercise jurisdiction over out-of-state defendants pursuant to Alaska's "long-arm statute," AS 09.05.015.[8]  This statute lists several specific grounds for jurisdiction and includes a broad catch-all provision.[9]  We have explained that the long-arm statute ultimately "authorizes Alaska's courts 'to assert jurisdiction to the maximum extent permitted by due process.' "[10]

The Due Process Clause of the Fourteenth Amendment "limits the personal jurisdiction of state courts."[11]  For a court to exercise jurisdiction over a nonresident defendant, "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "[12]  The United States Supreme Court has recognized two types of personal jurisdiction:  "general" (or "all-purpose") jurisdiction and "specific" (or "case-

---

[8]  *Polar Supply Co.*, 127 P.3d at 54 ("Alaska's long-arm statute, AS 09.05.015, is broad and refers to several specific circumstances under which personal jurisdiction may be exercised.").

[9]  AS 09.05.015.

[10]  *Polar Supply Co.*, 127 P.3d at 56 (quoting *Am. Nat'l Bank & Tr. Co. v. Int'l Seafoods of Alaska, Inc.*, 735 P.2d 747, 749 (Alaska 1987)); *see also Wash. Ins. Guar. Ass'n. v. Ramsey*, 922 P.2d 237, 240 (Alaska 1996) ("We have construed this statute to extend Alaska's jurisdiction to the maximum reach consistent with the guarantees of due process under the Fourteenth Amendment." (quoting *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498, 500 (Alaska 1980))).

[11]  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017).

[12]  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

linked") jurisdiction.[13]  The superior court concluded that Alaska does not have either form of personal jurisdiction over BioLife or Linkup, and Harper appeals this determination.

### 1. The superior court did not err in concluding that it did not have general jurisdiction over the defendants.

"A court with general jurisdiction may hear *any* claim against [a] defendant, even if all the incidents underlying the claim occurred in a different State."[14]  Harper suggests that general jurisdiction may exist "if the [defendant] company's contact with the forum is substantial — for example, if a significant number of sales are made through [its] website in the forum." But this significantly understates the level of contact required to establish general jurisdiction.[15]

"A court may assert general jurisdiction over [out-of-state] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[16]  This is a high standard, as "only a limited set of affiliations with a forum will render a

---

[13]  *Bristol-Myers Squibb*, 137 S. Ct. at 1779-80 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[14]  *Id.* at 1780 (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).

[15]  The only case Harper cites in support of her argument is *CompuServe, Inc. v. Patterson*, in which the Sixth Circuit found that online sales in the forum state were sufficient to create *specific* jurisdiction.  89 F.3d 1257, 1263 (6th Cir. 1996) ("CompuServe seeks to establish . . . specific personal jurisdiction over Patterson."); *id.* at 1268-69 (concluding that "Patterson had sufficient contacts with Ohio to support the exercise of personal jurisdiction over him.").

[16]  *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

defendant amenable to all-purpose jurisdiction there"[17]:

> "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction."[18]

In *Daimler AG v. Bauman*, the Supreme Court explicitly rejected the notion that a corporation is subject to general jurisdiction "in every State in which [it] 'engages in a substantial, continuous, and systematic course of business.' "[19]

In 1987 we addressed general personal jurisdiction in *Glover v. Western Air Lines, Inc.*[20] *Glover*, which predated the Supreme Court's decision in *Daimler*, presented the question whether Alaska courts had jurisdiction over various Avis car rental subsidiaries for a cause of action that arose in Mexico.[21] We noted that Avis's U.S. branch was "not licensed to do business in Alaska, ha[d] no business agents or employees in Alaska, own[ed] no property in Alaska and maintain[ed] no bank accounts in Alaska," but that it was, "however, a franchisor of the 'Avis' name, ha[d] licensed that name to several Alaskan franchisees, maintain[ed] considerable control over the

---

[17]     *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

[18]     *Id.* (alterations in original) (citation omitted) (first quoting *Goodyear*, 564 U.S. at 924; then quoting Lea Brilmayer, Jennifer Haverkamp & Buck Logan, *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721, 735 (1988)).

[19]     *Id.* at 137-38.

[20]     745 P.2d 1365 (Alaska 1987).

[21]     *Id.* at 1366.

day-to-day operations of the franchisees, and receive[d] substantial income from its licensing activities in Alaska."[22] Considering these facts in light of then-current Supreme Court case law, we concluded that "Avis U.S.'[s] contacts with Alaska [were] of a continuing, systematic, routine and substantial nature" and that general jurisdiction therefore was appropriate.[23] After *Glover* was decided, the Supreme Court clarified the law of general jurisdiction in *Daimler*.[24] In light of the Supreme Court's more recent discussion, *Glover* is no longer good law; had *Glover* come before us after the Supreme Court's decision in *Daimler*, we would have reached a different result. It is clear from *Daimler* that exercising general jurisdiction requires contacts that are substantially equivalent to incorporation or maintaining its principal place of business in the forum state.[25]

In this case Harper has not alleged facts that would establish a prima facie case of general jurisdiction. Harper's superior court filings make the following allegations: both BioLife and Linkup are New York corporations, and Linkup's headquarters are in New York City; BioLife's products are manufactured and distributed by HoneyCombs, which is based in Colorado; BioLife maintains an online presence through its website, through which consumers can place orders for herbal products; previously, the website's form for submitting shipping information included a drop-down menu that listed all 50 states, including Alaska; BioLife has made at least one product

---

[22]     *Id.* at 1369.

[23]     *Id.* at 1368-69 (analogizing the factual scenario in *Glover* to *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).

[24]     571 U.S. at 120-42.

[25]     *See id.* at 137.

shipment to Alaska, and possibly several more; BioLife published a brochure containing an allegedly false account regarding Harper, who claims she was an Alaska resident at all times relevant to this action, although she was living and working in Colorado when she discovered the brochure; and while living in Alaska, Harper received several samples of BioLife products from her family (not directly from BioLife).

From these allegations, it is clear that New York would have general jurisdiction over both BioLife and Linkup, as both are incorporated there and maintain headquarters there. BioLife may arguably be subject to general jurisdiction in Colorado because its products are manufactured there and distributed from there, which could make Colorado BioLife's "principal place of business."[26] But none of these allegations, even if taken as true and considered in the light most favorable to Harper, establish contacts with Alaska approaching a level that would make either company "essentially at home" in this state.[27] Accordingly, it was not error for the superior court to rule that it had no general jurisdiction in this case.

### 2. The superior court did not err in concluding that it did not have specific jurisdiction over BioLife.

A forum state without general jurisdiction may nonetheless exercise specific personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[28] Specific jurisdiction is appropriate where a suit "aris[es] out of or relate[s] to the defendant's contacts with the

---

[26]    *Id.*

[27]    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[28]    *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

forum."[29]  The Supreme Court has emphasized that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'  When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."[30]  "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."[31]

In this case Harper makes numerous allegations regarding BioLife's commercial contacts with Alaska.  These allegations are disputed, but because the case was dismissed for lack of jurisdiction without an evidentiary hearing, they must be taken as true.[32]  These allegations may well be sufficient to support specific jurisdiction over a claim such as breach of contract or product liability brought by an Alaskan BioLife customer.[33]  But Harper brought claims for right of publicity, right of privacy, and unjust

---

[29]     *Daimler*, 571 U.S. at 127 (alterations in original) (quoting *Helicopteros*, 466 U.S. at 414 n.8).

[30]     *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (second alteration in original) (citation omitted) (quoting *Goodyear*, 564 U.S. at 919).

[31]     *Goodyear*, 564 U.S. at 930 n.6, *quoted in Bristol-Myers Squibb*, 137 S. Ct. at 1781.

[32]     *See Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1217 (Alaska 2009).

[33]     *Cf. Polar Supply Co. v. Steelmaster Indus., Inc.*, 127 P.3d 52, 53-54, 58 (Alaska 2005) (concluding that personal jurisdiction was appropriate in a breach of warranty action where a Canadian manufacturer contracted to sell a telescopic trolley boom to an Alaskan company, even though the manufacturer was only responsible for shipping the boom as far as Washington).

enrichment. These claims do not arise out of any commercial activity, but out of BioLife publishing the allegedly false story about Harper. And specific jurisdiction must rest on contacts with Alaska that relate to these claims.

### a. "Minimum contacts" in the intentional torts context

In *Keeton v. Hustler Magazine, Inc.*, a New York resident brought a libel suit in federal court in New Hampshire against an Ohio corporation that had its principal place of business in California.[34] The Supreme Court found that New Hampshire could exercise specific jurisdiction over the publisher of allegedly libelous magazine articles because it sold "some 10 to 15,000 copies of *Hustler* magazine in that State each month," which amounted to conduct "purposefully directed at New Hampshire."[35] The Court explained that the respondent had "continuously and deliberately exploited the New Hampshire market" and therefore "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine."[36] Even though the petitioner had no connection with New Hampshire other than the "circulation . . . of a magazine that she assist[ed] in producing," the Court explained that "New Hampshire ha[d] a significant interest in redressing injuries that actually occur[red] within the State" and that the "petitioner was suing, at least in part, for damages suffered in New Hampshire."[37]

In *Calder v. Jones*, a California resident brought suit in California state

---

[34] 465 U.S. 770, 772 (1984).

[35] *Id.* at 772, 774-75.

[36] *Id.* at 781.

[37] *Id.* at 772, 776.

court over an allegedly libelous article written and edited in Florida.[38] The Supreme Court found that both the author and the editor were subject to personal jurisdiction in California because "their intentional, and allegedly tortious, actions were expressly aimed at California,"[39] making them "primary participants in an alleged wrongdoing intentionally directed at a California resident."[40] The Court explained that "[t]he allegedly libelous story concerned the California activities of a California resident . . . whose television career was centered in California," that it "was drawn from California sources," and that "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."[41] The Court noted that the petitioners wrote and edited the allegedly libelous article, knowing that it "would have a potentially devastating impact upon respondent" and "that the brunt of that injury would be felt by respondent in the State in which she live[d] and work[ed] and in which the [publishing magazine] ha[d] its largest circulation."[42] In short, the Court found that California jurisdiction was proper "because of [petitioners'] intentional conduct in Florida calculated to cause injury to respondent in California."[43]

Although *Calder* involved a libel claim, courts have applied its "effects

---

[38]    465 U.S. 783, 784 (1984).

[39]    *Id.* at 789.

[40]    *Id.* at 790.

[41]    *Id.* at 788-89.

[42]    *Id.* at 789-90.

[43]    *Id.* at 791.

test" broadly to other intentional torts.[44]   However, "merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction."[45]   In *Walden v. Fiore*, the Supreme Court explained that in *Calder,* "the 'effects' caused by the defendants' article . . . connected the defendants' conduct to *California*, not just to a plaintiff who lived there."[46]   The Court explained that "the plaintiff cannot be the only link between the defendant and the forum.   Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[47]

In *Walden*, a Georgia police officer working as a deputized agent for the Drug Enforcement Administration seized a large amount of cash at a Georgia airport from a Nevada resident who was about to board a plane to Las Vegas; later, the agent submitted an allegedly false affidavit to show probable cause for forfeiture of the funds.[48] The Nevada resident argued that this amounted to conduct "expressly aimed" at Nevada, but the Supreme Court disagreed.[49]   As the Court explained:

> Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed

---

[44]   *See Pavlovich v. Superior Court*, 58 P.3d 2, 7 (Cal. 2002) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259-60, 261 (3d Cir. 1998); *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995)).

[45]   *Id.* at 8 (citing *IMO*, 155 F.3d at 265; *Griffis v. Luban*, 646 N.W.2d 527, 534 (Minn. 2002)).

[46]   571 U.S. 277, 288 (2014) (emphasis in original).

[47]   *Id.* at 285.

[48]   *Id.* at 279-81.

[49]   *Id.* at 282.

his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.[50]

In short, in order to establish a prima facie case for personal jurisdiction over BioLife, it is not enough for Harper to allege that BioLife took actions aimed at her or actions that harmed her. Rather, she would need to allege some action or conduct by BioLife, related to her claims, that was purposefully directed at the State of Alaska.

Here, Harper has made a number of specific allegations regarding BioLife's contacts with Alaska. Before the superior court, she asserted that BioLife made numerous sales of herbal products to Alaska; however, as explained above, Harper's claims do not arise out of any commercial sales, so these cannot be used as the basis for specific jurisdiction. She also cannot rely on claiming Alaska residency, as *Walden* clearly bars a court from exercising jurisdiction based solely on the plaintiff's connections with the forum state, even if the defendant was aware of those connections.[51] The only alleged contact relating to Harper's claim is the publication of the brochure that mentions Harper. Harper did not allege that any Alaska resident ever actually viewed the brochure online or had it emailed or otherwise transmitted to them, or that any printed copy of the brochure was ever sent to Alaska. Nor did she allege that BioLife drew on Alaska sources in writing the brochure or that BioLife knew of any connection its brochure would have to Alaska. In other words, unlike *Keeton* and *Calder*, there is no indication that BioLife in any way targeted Alaska when publishing the brochure.

---

[50] *Id.* at 289 (citation omitted).

[51] *Id.*

Rather, like in *Walden*, BioLife's publication appears to be entirely out-of-state conduct that happened to affect a person with connections to Alaska.[52] Accordingly, the case law on personal jurisdiction in the intentional tort context weighs against concluding that BioLife is subject to specific personal jurisdiction in Alaska.

### b. "Minimum contacts" on the Internet

On appeal, just as in her opposition to the motion to dismiss before the superior court, Harper's argument focuses primarily on the fact that the brochure containing the allegedly false story about her was available on BioLife's website. She argues that "the primary issue at hand is whether [BioLife's] internet presence or other electronic remote contacts here [in Alaska] suffice" as a basis for specific jurisdiction.

The website is commercial in nature, but Harper's claims (for right of publicity, right of privacy, and unjust enrichment) do not arise out of any commercial activity on the website, so we need not decide whether BioLife's "electronic remote contacts" could be a basis for jurisdiction. The claims relate to the publication of a brochure that included an allegedly false account regarding Harper and which was available on the website and viewable in Alaska. The posting of the brochure on the website is passive,[53] and Harper has made no allegation that the brochure was ever viewed in Alaska or that BioLife knew that she had any connections to Alaska. The superior court did not err in concluding that "[a]lthough Bio[L]ife arguably did at one time purposefully direct its activities to Alaska residents, the claims at issue in this case do not relate to or arise from those activities." And the court did not err in determining that it did not have specific personal jurisdiction over BioLife.

---

[52]     *See id.* at 291.

[53]     *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

**3.      The superior court did not err in concluding that it did not have specific jurisdiction over Linkup.**

Harper makes no allegations at all about Linkup apart from its affiliation with BioLife.  Specifically, Harper asserts that BioLife is a subsidiary of Linkup, although the defendants alleged in superior court that the two are separate companies under common ownership.[54]  But even taking Harper's allegations as true, she still fails to make a prima facie case for jurisdiction over Linkup.

Beyond claiming that Linkup and BioLife share a CEO and founder and claiming that Linkup owns BioLife, Harper has made no allegations that relate to Linkup in any way.  The lack of allegations regarding Linkup was specifically raised in the defendants' reply brief in support of their motion to dismiss, but Harper did not respond to this issue in any filings before the superior court or on appeal.  Even taking all Harper's allegations as true and viewing all facts in the light most favorable to her position, the record before this court does not reveal any contacts between Linkup and Alaska.  Linkup has not been shown, or even alleged, to have purposefully availed itself of the privileges of conducting activities in Alaska, either on its own behalf or through BioLife.  Thus, any exercise of jurisdiction over Linkup would be inappropriate, and the superior court did not err in determining that it did not have specific jurisdiction over Linkup.

**B.      The Superior Court Did Not Misconstrue And Misapply The Law Regarding The Place Of Harper's Injury.**

Harper argues that the superior court "misconstrued and misapplied law regarding the place of [her] injury," pointing specifically to the superior court's comment

---

[54]      On appeal, BioLife and Linkup appear to have abandoned this allegation, apparently conceding that "Linkup is the parent company of [BioLife]."

that "even if Harper had demonstrated that Bio[L]ife sold a large volume of its goods through its website to Alaskans, this does not appear to be relevant to whether or not Bio[L]ife's allegedly false advertising using Harper's name caused her any harm whatsoever."[55] In *Keeton v. Hustler Magazine, Inc.*, the Supreme Court explained that "[t]he tort of libel is generally held to occur wherever the offending material is circulated."[56] Since the offending material in this case was accessible on BioLife's website in Alaska, BioLife could be said to have "circulated" it in Alaska, thereby arguably injuring Harper in Alaska. But the defendant magazine's contacts with the forum state in *Keeton* consisted of the continuous and deliberate shipping of the offending material into that state.[57] Here, the only active contacts Harper alleges BioLife had with Alaska are unrelated to the offending material. And the superior court properly drew this distinction. The superior court made no comment as to where any injury to Harper took place; it neither construed nor applied the law regarding the place of Harper's injury at all, much less incorrectly. Thus, the court did not misconstrue or misapply the law regarding the place of Harper's injury.

## C. The Superior Court Did Not Abuse Its Discretion In Denying Harper's Request To Allow Further Jurisdictional Discovery.

Harper finally argues that the superior court abused its discretion by refusing to "open the case for further jurisdictional discovery before dismissing it on

---

[55] Harper cites *Rosa & Raymond Parks Institute for Self Development v. Target Corp.*, 90 F. Supp. 3d 1256 (M.D. Ala. 2015), *aff'd* 812 F.3d 824 (11th Cir. 2016), in support of her argument. But that case dealt with choice-of-law rules, which is a separate issue from whether a court can appropriately exercise personal jurisdiction over a defendant. *Id.* at 1260-61.

[56] 465 U.S. 770, 777 (1984).

[57] *Id.* at 781.

jurisdictional grounds" and that the court improperly "rel[ied] solely on its own reading and cred[i]bility determination of the Appellees, who each have a very substantial self-interest in the outcome of this litigation." Citing several Ninth Circuit cases,[58] she argues that "where affidavits are directly conflicting on material points, it is not possible for the district court to 'weigh' the affidavits in order to resolve disputed issues," and for that reason, "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss."[59]

As explained above, "[w]hen considering the appeal of a motion to dismiss we 'presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-moving party.' "[60] The superior court's order does indicate that the court considered the defendants' jurisdictional assertions more credible than Harper's: specifically, it noted that "according to [BioLife's] records, BioLife has never made a sale to an Alaska resident." Under the applicable standard, the court should have taken Harper's allegations as true and assumed that BioLife had fulfilled "several orders from Alaska."

Regardless, this error was harmless: it is clear from the superior court's order that its ultimate decision was not based on disputed facts. The court concluded that no personal jurisdiction existed, not because BioLife had insufficient contacts with Alaska, but because the alleged contacts were not relevant to Harper's actual claims: the court stated, "Although Bio[L]ife arguably did at one time purposefully direct its

---

[58] *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977).

[59] *See Data Disc, Inc.*, 557 F.2d at 1285.

[60] *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1217 (Alaska 2009) (quoting *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 308 (Alaska 2007)).

activities to Alaska residents, the claims at issue in this case do not relate to or arise from those activities." Harper cites no authority for the proposition that the superior court is required to open the case for jurisdictional discovery when the plaintiff has failed to allege facts that would allow jurisdiction if construed in the light most favorable to the plaintiff. It was not an abuse of discretion for the superior court to decline opening the case for jurisdictional discovery.

## V. CONCLUSION

We AFFIRM the superior court's order dismissing Harper's suit.